UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JEFF CASHMAN,<br><br>      Plaintiff,<br><br>v.<br><br>GREYORANGE, INC., SAMAY KOHLI, AND UNKNOWN DEFENDANTS A & B,<br><br>      Defendants. | CIVIL ACTION NO.<br>1:22-CV-02069-JPB |

## ORDER

This matter comes before the Court on GreyOrange, Inc. and Samay Kohli's (collectively, "Defendants") Motion to Dismiss Jeff Cashman's ("Plaintiff") Complaint [Doc. 6]. The Court finds as follows:

## BACKGROUND

**A.  Factual History**

The facts alleged in Plaintiff's Complaint are summarized as follows. Plaintiff is the former Senior Vice President and Global Chief Operating Officer of Defendant GreyOrange. [Doc. 1, p. 1]. Defendant GreyOrange is a global technology company. Id. at 2. Defendant Kohli is the Chief Executive Officer and Co-founder of Defendant GreyOrange. Id.

Defendants hired Plaintiff in July 2019.  Id. at 4.  Plaintiff alleges that Defendants promised Plaintiff significant bonus opportunities and stock options to induce Plaintiff to accept a below-market value base salary.  Id. at 5.  Plaintiff attached to his Complaint a July 20, 2019 letter, which Plaintiff purports promised him that he would receive a performance bonus to be paid on March 31, 2022, and a performance equity bonus to be paid on April 1, 2022.  Id. at 5–6; [Doc. 1-1].  According to Plaintiff, Defendant GreyOrange used stock option grants in its efforts to induce talent to come to the company.  [Doc. 1, p. 8].  Plaintiff alleges that he accepted Defendants' employment offer in reliance on the bonus and equity promises that Defendants made.  Id. at 6–7.

Plaintiff further alleges that after Defendants hired him, Defendant GreyOrange granted Plaintiff stock options to purchase shares of the company at a fixed price through multiple stock option grant agreements.  Id. at 6.  Plaintiff entered into the stock option grant agreements pursuant to Defendant GreyOrange's "Stock Option Plan I – 2019," (the "GreyOrange Plan") which Plaintiff attached to his Complaint.  Id. at 6; [Doc. 1-2].  Plaintiff alleges that Defendant GreyOrange, through the provision of the GreyOrange Plan, maintains an employee stock ownership plan ("ESOP") subject to regulation by the Employee Retirement Income Security Act of 1974 ("ERISA").  [Doc. 1, p. 2].

Therefore, Plaintiff alleges that he was a participant in and beneficiary of an ERISA-governed ESOP.  Id. at 6, 9.

The Court summarizes the GreyOrange Plan's relevant terms as follows. The GreyOrange Plan provides for the discretionary grant to selected employees of options to purchase stock in the company.  See [Doc. 1-2].  The GreyOrange Plan states that the objective of the plan is

> to reward the Participant for their association and performance as well as to motivate them to contribute to the growth and profitability of the Company.  The Company also intends to use this Plan to attract and retain key talents in the Company.  The Company views this Plan as [an] instrument that would enable sharing the value with the Participants they create for the Company in the years to come.

Id. at 3.  Under the GreyOrange Plan, the options to purchase stock that are granted to selected employees vest according to a vesting schedule that is based on continued employment with Defendant GreyOrange.  Id. at 10.  Vested options can then be exercised during employment upon the occurrence of certain events, "unless the options are held under [an] ESOP Trust in which case, [the] employee shall be eligible to exercise at his will post vesting of shares."  Id. at 11. Additionally, vested options can be exercised upon events of separation including resignation, termination or retirement.  Id. at 12.

Plaintiff alleges that during his employment at Defendant GreyOrange, he met or well-exceeded all expectations and performance metrics, and he never

received any formal or informal discipline or other performance-improvement coaching. [Doc. 1, p. 7]. Nevertheless, Defendant GreyOrange terminated Plaintiff on March 30, 2022. Id. at 8–9. Plaintiff asserts that Defendants terminated him in bad faith to avoid Defendants' contractual obligations to pay Plaintiff's bonuses and to prevent the vesting of his stock ownership. Id. at 8. Plaintiff values his bonus and stock losses resulting from his termination to be more than $1,000,000. Id. at 9.

**B.      Procedural History**

Plaintiff filed this action on May 24, 2022. [Doc. 1]. Plaintiff attached several exhibits to his complaint: a July 20, 2019 employment offer letter from Defendant GreyOrange to Plaintiff, [Doc. 1-1], the GreyOrange Plan, [Doc. 1-2], and a September 7, 2021 letter from Defendant Kohli to the GreyOrange leadership team, [Doc. 1-3]. Plaintiff's Complaint sets forth federal claims for benefit enforcement under Section 502(A)(1)(B) of ERISA (Count One) and attorneys' fees and costs under Section 502(g)(1) of ERISA (Count Two). [Doc. 1]. Plaintiff also brings state law claims for breach of contract (Count Three), breach of the implied covenant of good faith and fair dealing (Count Four) and attorneys' fees and expenses (Count Five). Id.

On July 22, 2022, Defendants filed the instant Motion to Dismiss. [Doc. 6]. Defendants also attached exhibits to their Motion to Dismiss: a declaration by Defendant Kohli which reproduces the same GreyOrange Plan that was attached to Plaintiff's Complaint, [Doc. 6-2], and stock option grant notice letters dated February 3, 2021, and July 12, 2021, [Doc. 6-3]. Defendants move to dismiss Plaintiff's ERISA claims (Counts One and Two) for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6). [Doc. 6-1]. Defendants move to dismiss Plaintiff's state law claims (Counts Three, Four and Five) under Rule 12(b)(6) for failure to state a claim. Id. The Court will first analyze whether it has subject-matter jurisdiction to consider Plaintiff's claims before analyzing whether Plaintiff has sufficiently stated claims for relief. See Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co., 68 F.3d 409, 414 (11th Cir. 1995) ("Any time doubt arises as to the existence of federal jurisdiction, [the Court is] obliged to address the issue before proceeding further.").

**LEGAL STANDARD**

Federal courts are courts of limited jurisdiction. Mirage Resorts, Inc. v. Quite Nacelle Corp., 206 F.3d 1398, 1400 (11th Cir. 2000). As such, district courts may exercise jurisdiction in limited circumstances, such as where the parties

5

are diverse and where the case presents a federal question.  See 28 U.S.C. §§ 1332, 1335.  The existence of a federal question must appear on the face of the complaint.  Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  A party may challenge the court's subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Challenges to subject-matter jurisdiction under Rule 12(b)(1) take two forms.  A facial attack questions subject-matter jurisdiction based on the allegations in the complaint alone.  Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003).  "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true."  Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).  This is not the case for a factual attack, which contests jurisdiction "in fact, irrespective of the pleadings.  In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits."  Morrison, 323 F.3d at 925 (citation omitted).  "The burden of proof on a motion to dismiss for lack of subject-matter jurisdiction is on the party asserting jurisdiction."  Murphy v. Sec'y, U.S. Dep't of Army, 769 F. App'x 779, 782 (11th Cir. 2019).

There is an important distinction between dismissal for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. Blue Cross & Blue Shield of Ala. v. Sanders, 138 F.3d 1347, 1352 (11th Cir. 1998). "[A] federal court may dismiss a federal question claim for lack of subject matter jurisdiction only if: (1) 'the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction'; or (2) 'such a claim is wholly insubstantial and frivolous.'" Id. (quoting Bell v. Hood, 327 U.S. 678, 682–83 (1946)). Under the second basis, subject-matter jurisdiction is lacking only "if the claim 'has no plausible foundation, or if the court concludes that a prior Supreme Court decision clearly forecloses the claim.'" Id. (quoting Barnett v. Bailey, 956 F.2d 1036, 1041 (11th Cir. 1992)).

## ANALYSIS

Plaintiff does not allege that diversity exists between the parties. Therefore, subject-matter jurisdiction in this case depends on the existence of a federal question. See 28 U.S.C. §§ 1332, 1335. Because Plaintiff's federal claims are brought under ERISA, whether this action is properly before this Court depends on whether the plan at issue in this case is *plausibly* governed by ERISA. See Sanders, 138 F.3d at 1352.

Plaintiff alleges that he was a participant in and beneficiary of an ERISA-regulated ESOP through his participation in the GreyOrange Plan. On the other hand, Defendants contend that (1) Defendant GreyOrange does not maintain an ESOP and (2) the GreyOrange Plan is not an ERISA-governed plan. To determine whether this action is properly before this Court, the Court first analyzes whether it is plausible that the GreyOrange Plan is an ESOP and then analyzes whether it is plausible that the GreyOrange Plan otherwise qualifies as an ERISA-governed plan.

**A. Is the GreyOrange Plan an ESOP?**

The parties disagree as to whether the GreyOrange Plan is an ESOP. An ESOP is "a type of pension plan that invests primarily in the stock of the company that employs the plan participants." Fifth Third Bankcorp v. Dudenhoeffer, 573 U.S. 409, 412 (2014); see also Herman v. South Carolina Nat'l Bank, 140 F.3d 1413, 1416 n.2 (11th Cir. 1998) (noting that that an employee stock ownership plan is a "plan that invests primarily in the employer's stock"). In other words, "ESOPs are tax-qualified retirement plans corporate employers establish to provide benefits to their employees in the form of stock ownership in the company." In re Davis, No. 07-21278, 2009 Bankr. LEXIS 4277 at *5 (Bankr. D. Kan. Mar. 23, 2009). On the other hand, "[a]n employee stock option plan . . . is a contract

between the company and the employee which grants the employee the right to buy a specific number of [the] company's shares at a fixed price within a certain time." Id. at *5–6.  Although ESOPs are governed by ERISA, see Herman, 140 F.3d at 1416 n.2, employee stock option plans generally are not, see Oatway v. Am. Int'l Grp., Inc., 325 F.3d 184, 187 (3d Cir. 2003) ("[M]ost courts have uniformly held that an incentive stock option plan is not an ERISA plan.").

Here, the Court does not find it plausible that the GreyOrange Plan is an ESOP.  In addition to the title of the GreyOrange Plan describing it as a "Stock Option Plan," the terms of the plan unequivocally demonstrate that it operates like a typical stock option plan:  the GreyOrange Plan grants selected employees the option to purchase stock in the company at a fixed price at some point in the future, pursuant to a vesting schedule.  Further, as noted above, in considering a Rule 12(b)(1) motion to dismiss, the Court has discretion to consider extrinsic evidence.  Therefore, the Court takes into consideration Defendant Kohli's declaration regarding his personal knowledge that GreyOrange is not, and never has been, an employee-owned company, nor has GreyOrange ever established, sponsored or maintained an ESOP.

Outside of the Complaint's single conclusory allegation that "[Defendant] GreyOrange is an [ESOP] subject to regulation by ERISA," Plaintiff simply

attached the plan document to the Complaint and argues that it demonstrates that the GreyOrange Plan *could* be an ESOP.  Specifically, in his response to Defendants' motion to dismiss, Plaintiff points to language in the GreyOrange Plan that provides that vested options can be exercised upon the occurrence of certain events, "unless the options are held under [an] ESOP Trust in which case, [the] employee shall be eligible to exercise at his will post vesting of shares."  [Doc. 1-2, p. 11].  Although this provision of the GreyOrange Plan contemplates a scenario where some options may be held in a trust, there is no indication that the GreyOrange Plan itself is an ESOP.  The terms of the GreyOrange Plan demonstrate that it functions as a stock option plan and not as a retirement benefits or pension plan.  Therefore, Plaintiff has not met the burden of proof for asserting federal jurisdiction based on the existence of an ESOP.

The Court next examines whether it is plausible that the GreyOrange Plan otherwise qualifies as an ERISA plan.

**B. Is the GreyOrange Plan an ERISA Plan?**

Having found it implausible that the GreyOrange Plan is an ESOP, the Court next considers whether the GreyOrange Plan is conceivably an "employee benefit plan" subject to regulation by ERISA.  Under ERISA, "employee benefit plans" are defined as welfare benefit plans, pension benefit plans or both.  29 U.S.C. §

1002(3).  Specifically applicable to this action is whether the GreyOrange Plan can plausibly be considered an "employee pension benefit plan" under 29 U.S.C. § 1002(2)(A).[1]

Section 1002(2)(A) defines "employee pension benefit plan" and "pension plan" as

> [A]ny plan . . . established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan . . .
>
> (i) provides retirement income to employees, or
>
> (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond . . . .

In other words, based on ERISA's statutory definition, to find that a plan is considered an "employee pension benefit plan," the Court must determine two inquiries:  (1) whether the plan has been established by the employer and (2) whether the plan's express terms or surrounding circumstances (i) provides retirement income to employees or (ii) results in a

---

[1] An "employee welfare benefit plan" is a plan established for the purpose of providing beneficiaries, through insurance or otherwise, benefits such as medical care, disability, death and unemployment.  See 29 U.S.C. § 1002(1).  An "employee welfare benefit plan" is not at issue here.

11

deferral of income by employees for periods extending to the termination of covered employment or beyond.  See id.

At the outset, the Court notes that it is not disputed that Defendant GreyOrange established the GreyOrange Plan.  Therefore, the Court will focus its analysis on the second inquiry to determine whether it is plausible that the plan is governed by ERISA.  Starting with subsection (i), "[t]he words 'provides retirement income' patently refer only to plans *designed for the purpose of paying retirement income* whether as a result of their express terms or surrounding circumstances."  Tolbert v. RBC Capital Mkts. Corp., 758 F.3d 619, 624 (5th Cir. 2014) (emphasis in original) (quoting Murphy v. Inexco Oil Co., 611 F.2d 570, 575 (5th Cir. 1980)).  Therefore, a plan is not a "pension plan" under 29 U.S.C. § 1002(2)(A)(i) if the primary purpose of the plan is "to reward employees during their active years."  Murphy, 611 F.2d at 574.

Turning to subsection (ii), a plan that "results in a deferral of income" is one where "'deferral of income' arises as an 'effect, issue, or outcome' from that plan."  Tolbert, 758 F.3d at 625.  The deferral of income must be effectuated "by employees for periods extending to the termination of covered employment or beyond."  29 U.S.C. § 1002(A)(2)(ii).  However, the

12

occurrence of post-termination payments alone does not prove that income is deferred such that a plan is considered a "pension plan" under ERISA. See Tolbert, 758 F.3d at 625 (discussing that mere deferral of payments does not dispositively result in the designation of a plan as a "pension plan"); Murphy, 611 F.2d at 575 ("[T]he mere fact that some payments under a plan may be made after an employee has retired or left the company does not result in ERISA coverage"); Boos v. AT&T, Inc., 643 F.3d 127, 134 (5th Cir. 2011) (finding retirees who received reimbursements had not foregone any income to receive payments after retirement).

Here, by its express terms, the purpose of the GreyOrange Plan is to reward employees for their performance and to attract and retain talent. Plaintiff himself acknowledges that the stock options granted through the GreyOrange Plan were used to induce Plaintiff to accept employment with Defendants, and that Defendants utilized the stock option grants to induce talent to come to the company. Further, there is no indication that the GreyOrange Plan, by its express terms or by surrounding circumstances, systematically defers income to a time after employment is terminated. Although the GreyOrange Plan contemplates scenarios where stock options can be exercised after termination, retirement or other employment

separation events, the GreyOrange Plan specifically contains provisions addressing the exercise of stock options *during* employment as well. Therefore, the Court finds it implausible that the GreyOrange Plan falls under the definition of an ERISA-governed pension plan.

Alternatively, even assuming that the GreyOrange Plan might be considered an ERISA plan, it would nevertheless be exempted from ERISA regulation under the United States Department of Labor's statutory exceptions to ERISA called "safe harbors" found in 29 C.F.R. § 2510.3-2.  Particularly relevant to this case is the "bonus exemption" under 29 C.F.R. § 2510.3-2(c), which provides that an employee pension benefit plan "shall not include payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees."

As the name "bonus exception" implies, this regulation concerns bonuses, not deferred income or regular compensation.  See Wilson v. Safelite Grp., Inc., 930 F.3d 429, 435 (6th Cir. 2019).  Generally, plans that are subject to the bonus exemption will "state that the plan's express purpose is to pay a financial 'bonus' or 'additional incentive' to employees to encourage performance or retention."  Id. at 435–36; see, e.g., Oatway, 325 F.3d at 189; Emmenegger v. Bull Moose Tube

Co., 197 F.3d 929, 933 (8th Cir. 1999); Hagel v. United Land Co., 759 F. Supp. 1199, 1201–02 (E.D. Va. 1991).

Importantly, "[a] bonus plan may defer payment of bonuses and remain exempt, 'unless such payments are *systematically* deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees.'" Wilson, 930 F.3d at 436 (emphasis in original) (quoting C.F.R. § 2510.3-2(c)). A plan may even result in payment of bonuses post-termination and still be exempted under the bonus exemption. Id. (discussing that incidental payments post-termination differ from systematic deferrals of payments); see also Oatway, 325 F.3d at 189 (holding an employer's plan was not systematically deferring payment where the plan granted employee stock options that could be exercised on a yearly basis and would expire if not exercised in ten years); Murphy, 611 F.2d at 575 (holding an employer's payment of royalty payments to be current income and not systematically deferred income). Significant to the instant action, a plan may fit under the bonus exception where the plan "provide[s] for certain in-service distributions according to a fixed vesting schedule where a deferral of bonus payments to termination 'would only occur by happenstance.'" Wilson, 930 F.3d at 436 (quoting Emmenegger, 197 F.3d at 933); see also Emmenegger, 197 F.3d at 931–34; McKinsey v. Sentry Ins., 986 F.2d 401, 406

(10th Cir. 1993); Killian v. McCulloch, 850 F. Supp. 1239, 1246–47 (E.D. Pa. 1994).

As noted above, the express terms of the GreyOrange Plan and Plaintiff's allegations unequivocally demonstrate that the purpose of the plan is to incentivize or reward employees for good performance and to attract and retain talent. Further, the provisions of the GreyOrange Plan that provide for the exercise of stock options *during* employment go against a finding that the plan systematically defers payment until a time *after* termination of employment.

Therefore, even assuming that the GreyOrange Plan might qualify as an ERISA plan, its clearly stated purpose and Plaintiff's own allegations demonstrate that the plan would nevertheless fall under the bonus exception.

Based on the above, the Court finds no plausible foundation for having jurisdiction to hear this action. Accordingly, Plaintiff's Complaint is due to be dismissed for lack of subject-matter jurisdiction.

## CONCLUSION

Defendants' Motion to Dismiss [Doc. 6] is **GRANTED**. Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**. The Clerk is **DIRECTED** to close the case.

**SO ORDERED** this 27th day of March, 2023.

_____
J. P. BOULEE
United States District Judge